IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| AHMID DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 1:18-cv-1534-TSE-MSN |
| | ) | |
| SENTEL CORPORATION *et al*., | ) | |
| Defendants. | ) | |

## REPORT & RECOMMENDATION

This matter comes before the Court on plaintiff Ahmid Douglas's motion for default judgment as to defendant Infinite Services & Solutions, Inc. (Dkt. No. 66). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends that plaintiff's motion for default judgment be GRANTED in part and DENIED in part.

## I.    Procedural Background

On December 11, 2018, plaintiff brought an action against defendants Sentel Corporation, Infinite Services & Solutions, Inc., ("ISS") Vectrus Mission Solutions Corporation, and Vectrus, Inc. for violations of Title VII of the Civil Rights Act of 1964, specifically the failure to accommodate his religion, the creation and maintenance of a hostile and discriminatory working environment, and retaliation. (Dkt. No. 1). On January 9, 2019, plaintiff filed proposed summonses as to all four defendants, which were issued on January 10, 2019. (Dkt. No. 6). On January 31, 2020, the summons as to ISS was returned unexecuted. (Dkt. No. 8). On February 1, 2019, a new summons was issued as to ISS. (Dkt. No. 9). ISS was successfully served on February 11, 2019. (Dkt. No. 12). The other three defendants in this case subsequently filed motions to dismiss, but ISS failed to respond. Therefore, on April 12, 2019, plaintiff filed a request for entry of default as to

ISS. (Dkt. No. 30). On April 15, 2019, the Clerk of the Court entered default as to ISS. (Dkt. No. 31). On September 12, 2019, a settlement conference was held before the undersigned. After discussions which extended beyond the conference itself, the parties were able to reach a settlement. ISS did not participate in the settlement discussions. (Dkt. No. 56). The case was subsequently terminated on October 28, 2019, except with respect to ISS. (Dkt. No. 58).

On November 7, 2019, plaintiff filed a motion for extension of time in which to set the motion for default judgment for hearing, citing the need to gather additional evidence and documents from individuals working around the world. (Dkt. No. 59). This motion was granted, and a hearing was eventually set for January 10, 2020 (Dkt. No. 65). No representative of the defendant ISS appeared at the hearing. (Dkt. No. 67). Plaintiff was granted an additional two weeks to file a supplemental affidavit on the issue of fees, which was timely submitted on January 23, 2020. (Dkt. No. 68). Accordingly, the matter is now ripe for disposition.

## II.   Factual Background

The following facts are established by plaintiff's second amended complaint (Dkt. No. 53) as well as by the memorandum in support of plaintiff's motion for default judgment (Dkt. No. 66-2).

Plaintiff Ahmid Douglas is a citizen of the United States and a resident of Georgia. Plaintiff was employed by defendants Sentel and ISS on Department of Defense contracts and worked in Afghanistan. (Dkt. No. 53) ¶ 6.

Defendant ISS is a Georgia Corporation, which maintains contracts with the Department of Defense. *Id*. at ¶ 10.  At the time relevant to the second amended complaint, ISS was a subcontractor of defendant Sentel Corporation. *Id.* ISS was the employer of Douglas within the meaning of Title VII of the Civil Rights Act. *Id.*

Douglas was hired by defendant Sentel Corporation sometime in August of 2013 as a Process Coordinator Inspector. *Id*. at ¶ 15.  He was assigned to work on a Department of Defense contract at a military base in Bagram, Afghanistan. *Id*. During the course of his employment, plaintiff, who is a Muslim, repeatedly requested time to attend Friday prayers at the mosque on base. *Id*. at ¶ 16. This request was repeatedly denied, while employees of other faiths were permitted to attend services of their choice. *Id*. at ¶¶ 16-17. In December 2014, plaintiff's position with Sentel was eliminated and he was moved to a lower paying position with ISS, then a subcontractor of Sentel. *Id*. at ¶¶ 19-20.

In January 2015, ISS failed to pay plaintiff, and plaintiff has yet to receive pay for this month. Throughout this period, plaintiff's requests to attend mosque continued to be denied, while other employees were permitted to attend church services. *Id*. at ¶ 22-23. In February 2015, plaintiff was again demoted by ISS. *Id*. at 24. Plaintiff complained to ISS management about the discrimination and hostile work environment but received no response. *Id*. at 25. At some point in the summer of 2015, plaintiff complained to the military and civilian personnel responsible for the contract about the discrimination. *Id*.  The Federal Civilian Manager directed that plaintiff must be allowed to pray, and contract employees were to stop interfering with his religious observance. *Id*. at 26. However, plaintiff was still not given time off or provided transportation to religious services, while non-Muslims were. *Id*. Subsequently, harassment by plaintiff's managers continued to escalate. *Id*. at 28. In August of 2015, he was falsely accused of threatening a team member who purportedly held prejudicial views towards Muslims. *Id*. at 27-28. Plaintiff contends this complaint was filed for the purpose of facilitating his termination. *Id*. at 33.

While the Military Police concluded that the complaint against plaintiff was unfounded, he continued to have conflict with his supervisors. Management officials attempted to write up plaintiff

for minor or nonexistent infractions throughout the fall. *Id.* at 34-36, and made further derogatory comments about Muslims. *Id.* at 36.

The situation became untenable in December, 2015. Between December 1 and December 5, 2015, plaintiff was moved to five different work locations. *Id.* at 40. On December 5, 2015, plaintiff expressed his concern with the constant relocation and continuing discrimination. He was told that management could task him however they wished and Mr. Douglas had no recourse. *Id.* at 42. On December 7, 2015, plaintiff reached out to the ISS Program Manager, Marcus Merritt, about the ongoing harassment and retaliation, but he received no response. *Id.* at 43. Finally, on December 8, 2015, plaintiff was called into a meeting at which his employment was terminated. *Id.*

After plaintiff's termination, ISS reported false and defamatory information to the Department of Defense ("DoD") and other agencies regarding Mr. Douglas. *Id.* at 46. The information placed in his files by ISS has adversely impacted plaintiff's ability to renew his security clearance or gain a new one. *Id.* at 47. Subsequent to his termination, plaintiff repeatedly applied to jobs with other contractors, but was not hired. He was informed by prospective employers that because of what they were told or learned about his DoD file, they would not hire him. *Id.* at 49.

In September 2017, more than one year after being fired, plaintiff obtained new employment. However, this employment only lasted a few months, based on negative information which came to light from his employment file. *Id.* at 51. In April 2018, ISS was contacted by the Human Resources department of Fluor Enterprises, a prospective employer, to confirm plaintiff's former employment. Fluor was told by ISS that plaintiff had not worked for ISS. *Id.* at 52.

Plaintiff now seeks damages under Title VII of the Civil Rights Act for the failure to accommodate his religion, the creation of a hostile work environment, and retaliation. He also has advanced state law claims, which include tortious interference with business expectancy, defamation, and conspiracy.

4

### III. **Jurisdiction, Venue, and Service of Process**

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, since this case includes a claim that arises under federal law. This Court has supplemental jurisdiction over the Virginia law claims because they are related state law claims under 28 U.S. Code § 1367. Venue is proper because the defendant is subject to personal jurisdiction and there is no district in which the action could otherwise be brought. While defendant ISS is a Georgia entity and is not registered to do business in Virginia, it has had substantial and systematic contacts with Virginia through its government contracts. Specifically, ISS maintained ongoing and continuous contracts with the Department of Defense, such as the contract on which the plaintiff was employed, including at Department of Defense sites in Virginia at Ft. Eustis, Ft. Lee and Marine Corps Base Quantico. *Id.* at 7-9.

### IV. **Standard**

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12,

2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact contained in the complaint are deemed to be admitted.

**V. Analysis**

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the second amended complaint (Dkt. No. 53), supported by plaintiff's motion for default judgment (Dkt. No. 66) and memorandum in support (Dkt. No. 66-2), establish that ISS violated Title VII of the Civil Rights Act, but do not support a finding in plaintiff's favor on the state law claims, except for a single instance of defamation.

**a. Title VII of the Civil Rights Act**

First, plaintiff has stated a plausible claim for relief under Title VII of the Civil Rights Act. Count IV of the second amended complaint alleges a failure to accommodate plaintiff's religious beliefs. Religious beliefs are protected under Title VII. The elements of a claim involving religious accommodation are that the employee "(1) has a bona fide religious belief, the practice of which conflicted with their employment; (2) has informed the employer of this belief and conflict; and (3) the employer nevertheless enforced its requirement against the employee." *Chalmers V. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir 1996). Here, plaintiff has successfully plead all three elements. First, plaintiff does have a bona fide religious belief, in the form of his Muslim faith. (Dkt. No. 66-2) 6. This belief conflicted with plaintiff's employment because all employees generally worked 12 hour days, seven days per week, which conflicted with his desire to attend Friday services at the mosque on the base. *Id.* Plaintiff also repeatedly informed his employer of this belief and conflict. *Id.* Nevertheless the employer enforced the requirement against plaintiff by failing to accommodate his religious request. *Id.*

Plaintiff has also set forth plausible claims for hostile work environment and retaliation under Title VII. Count V of the second amended complaint alleges a hostile work environment claim under Title VII. When plaintiff complained to management about the failure to accommodate his beliefs he was harassed in the workplace. (Dkt. No. 53) ¶¶ 26, 29, 33-35. Count VI of the second amended complaint alleges a claim for retaliation. Plaintiff was allegedly fired because he was arrested, but this was not true. *Id.* at ¶¶ 43 – 44. Subsequent to termination, the arrest and the alleged threat were included in his record and reported to DoD. *Id.* at ¶¶46-48. The information placed in the DoD file specifically interfered with Mr. Douglas acquiring employment at the level he was working for the 10 years before he encountered Sentel and ISS.

### b. Tortious Interference with Business Expectancy

Second, plaintiff has not properly plead a claim for tortious interference with a business expectancy. A claim of tortious interference with business expectancy must allege: "1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to the plaintiff." *Commercial Bus. Sys., Inc. v. HalifaxCorp.*, 484 S.E. 2d 892, 896 (Va 1997). Here, all four elements are not satisfied. First, while plaintiff's second amended complaint baldly states that he held a business expectancy with anticipation of future benefits, plaintiff's "formulaic recitation of the elements" is insufficient here. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Rather, plaintiff "must establish a 'probability' of future economic benefit … ; a 'possibility' that such benefit will accrue is insufficient." *Commercial Bus. Sys. v. Halifax Corp.*, 484 S.E.2d at 897. Plaintiff argues that he had been employed in this field for more than a decade before being terminated, (Dkt. No. 53) ¶ 85, and that he had never had any issue with his security clearance before, and had every reasonable

expectation that he would find employment after his termination. *Id.* at ¶ 86. But "'expectancy of remaining in business is too general to support a tortious interference claim.'" *Mansfield v. Anethesia Assocs.*, 2008 U.S. District LEXIS 34732 (E.D. Va., Apr. 28, 2008). This is precisely analogous to what plaintiff is claiming here, that he had an expectation of finding continued employment. Therefore, the undersigned recommends denying the motion for default judgment with regard to the claim for tortious interference with business expectancy.

### c. Defamation

To state a defamation claim under Virginia law, a plaintiff must show 1) publication 2) of an actionable statement with 3) the requisite intent. *Echtenkamp v. Loudon County Public Schs.*, 263 F.Supp.2d 1043, 1061 (E.D.Va. 2003). These elements have been met here with regard to one specific claim – the claim that in April 2018, ISS denied plaintiff ever worked for defendant when asked, but are not met to the extent plaintiff alleges defamation for any information reported to the DoD. This portion of the defamation claim fails to allege sufficient factual matter to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] For a claim to be "actionable," the statement must not only be false, but defamatory. A statement is per se defamatory if it imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of duties, or prejudices the party in its profession or trade. See *Yeagle v. Collegiate Times*, 255 Va. 293, 497 S.E.2d 136, 138 n. 2 (1998). Here, ISS's denial that plaintiff ever worked for them, which amounts to an allegation that plaintiff brazenly lied to secure employment, imputed an unfitness to perform his job and a lack of integrity and prejudiced plaintiff in his profession. (Dkt. No. 53) ¶ 97. Finally, the plaintiff has shown intent. ISS would certainly know the effect that a denial of this nature would have on a

---

[1] Moreover, since ISS is a government contractor which made these statements in the context of plaintiff's security clearance process, this claim is barred regardless. Government contractors are immune where allegedly defamatory statements are "given by a government contractor and its employees in response to queries by government investigators engaged in an official investigation." *Liverett v. DynCorp Int'l LLC*, 2018 U.S. Dist. LEXIS 53607 at *12-13 (E.D. Va. Mar. 28, 2018).

prospective employer. *Id.* Therefore, plaintiff has properly pled a cause of action for defamation as to the specific April 2018 statement by ISS denying that plaintiff had worked there.

### d. Conspiracy

Common law conspiracy arises when two or more persons combine to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means. *Commercial Business Systems Inc. v. Bellsouth Services, Inc.*, 249 Va 39, 48 (1995) citing *Hechler Chevrolet v. General Motors Corp.*, 230 Va 396 (1985); *Werth v. Fire Adjust. Bureau*, 160 Va. 845, cert. denied, 290 U.S. 659, 54 S.Ct. 74, 78 L.Ed. 570 (1933). Plaintiff lacks an adequate basis on which to plead common law conspiracy. Plaintiff argues in general terms in its motion for default that the complaint in this matter is filled with facts as to how the managers and employees of ISS conspired and followed through on actions to harm plaintiff. But while plaintiff certainly has plead general wrongdoing attributable to ISS, plaintiff has failed to specifically allege that ISS *combined* with any specific person or entity to accomplish some unlawful purpose. Plaintiff fails to plead specific allegations that ISS conspired with the other defendants, or that any specific person conspired with some other person, to commit unlawful acts. Therefore, plaintiff has not properly pled a cause of action against ISS on the claim of conspiracy.

### e. Damages

Plaintiff seeks damages in the form of lost wages, future pay, compensatory damages under Title VII of the Civil Rights Act, and punitive damages pursuant to his state law claims.

First, the undersigned finds that plaintiff has properly articulated his lost wage calculations. Defendant's lost wages total $282,814 through the end of 2019. (Dkt. No. 66-2) 9. In addition, while working overseas, plaintiff's compensation was covered by the Foreign Income Exclusion Act. This law excludes a portion of certain individuals' overseas income from being subject ot federal income tax. Given the applicable caps for the years since plaintiff lost his position,

defendant should be awarded an additional $98,985 to cover the tax payments he would not have otherwise incurred. Awarding this additional sum is therefore necessary to properly compute plaintiff's lost pay.

Plaintiff also asks for future pay. Plaintiff contends that because he is making less in his current role than he otherwise would have, he should be entitled to future pay covering the next four years. The undersigned finds that plaintiff has provided insufficient legal or factual support in his motion for default for an award of future pay. These damages are simply too speculative, and plaintiff has not pled facts sufficient to demonstrate that his income will not increase in the future above what is speculated herein. Moreover, it has been four years since plaintiff has held the position with ISS. *Id.* at 9. Defendant's obligation cannot continue into the future indefinitely.

Plaintiff also seeks compensatory damages. Plaintiff seeks $300,000 in compensatory damages under Title VII of the Civil Rights Act. Plaintiff also seeks $500,000 in punitive damages for his state law claims. A plaintiff's claim that they are owed a particular amount of money does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Here, plaintiff filed with the motion for default judgment two affidavits that provide very modest support for these additional damages. This affidavit mainly provides details regarding plaintiff's loss of wages, although it does state that the experience was "emotionally debilitating." (Dkt. No. 66-3) 9. Plaintiff also supplied an affidavit from his wife, which states that plaintiff "became lonely and depressed from the isolation at work", was "moody and not sleeping" at times, produced a "strain in their relationship", and that he continues to suffer from "anxiety, depression, and stress." (Dkt. No. 66-4). Plaintiff provides no medical records, affidavits from doctors, or other evidence beyond the aforementioned affidavits to support these damages. Plaintiff also fails to address in his motion that Title VII contains a statutory cap on

damages. This cap can be as low as $50,000 depending on the size of the defendant company. 42 U.S.C.A. § 1981(b)(3)(A). Given the modest evidence presented here, and that plaintiff has provided no facts regarding the size of ISS, the undersigned finds that an award of $50,000 in compensatory damages under Title VII would be appropriate. The undersigned also finds that additional punitive damages for plaintiff's surviving defamation claim would be inappropriate. First, this single defamation claim is much smaller than the universe of state law claims which plaintiff attempted to plead. Furthermore, as the Supreme Court has made clear, it "goes without saying that the courts can and should preclude double recovery by an individual." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002).  Plaintiff cites the damages "to his reputation and life" in support of his request for punitive damages, but these damages are seemingly identical to the compensatory damages he asks for under Title VII for the "harm he has suffered." (Dkt. No. 66-2) 11. Therefore, awarding plaintiff additional damages would amount to an inappropriate double recovery.

### f. Attorney's Fees

With the leave of the Court, the plaintiff submitted a supplemental affidavit in support of its petition for fees. Title VII of the Civil Rights Act provides for an award of reasonable attorney's fees and the costs of the action. 42 U.S.C. §2000e - 5(k). Plaintiff moves for an award of fees of $48,405, and costs in the amount of $430. The undersigned recommends that these fees be awarded. Title VII expressly provides that a district court "[i]n its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs [of a Title VII action]" 42 U.S.C. § 2000e-5(k). To determine the appropriate amount of attorney's fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008)).

11

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court outlined a framework for federal courts making fee petition decisions. According to this decision "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. Billing for the services of paralegals or other legal assistants are also encompassed by this, and therefore are recoverable as, "attorney's fees." *See Missouri v. Jenkins*, 491 U.S. 274, 288-89 (1989) ("A reasonable attorney's fee" refers to an attorney's work product, and thus, must account for the work, not only of attorneys, but also the work of paralegals.).

In the Fourth Circuit, the reasonableness of the rate and hours is determined by reference to the factors set forth in *Barber v. Kimbrell's*, *Inc.*, 577 F.2d 216 (4th Cir. 1978). These factors are the time and labor expended; the novelty and difficulty of the questions raised; the skill required to perform the services rendered; the attorney's opportunity cost in pursuing the litigation; the customary fee for similar work, the attorney's expectations at the outset of litigation; the amount in controversy and result obtained; the experience, reputation, and ability of the attorney; the undesirability of the case; the nature and length of the professional relationship between attorney and client; and fees awards in similar cases. *Id*.

Courts in the Eastern District of Virginia employ the *Vienna Metro* matrix. *Vienna Metro LLC v. Pulte Home Corp*., 786 F. Supp. 2d 1090 (E.D. Va. 2011). Plaintiff's counsel, a leading employment law attorney with over 40 years' experience, would fall into the range of $505 to $820 per hour under the matrix. *Id*. However, counsel only askes for an hourly rate of $350, a billing rate far lower than the range provided in the matrix. Counsel seeks recovery for 138.3 hours billed in this matter. The plaintiff attached a copy of the relevant billings, which go back all the way to 2015, as plaintiff had to spend a significant amount of time and resources before the EEOC before this case was even brought in the Eastern District of Virginia. (Dkt. No. 69-2) at 2-11. In her affidavit,

counsel makes clear that this billing represents only the time reasonable expended relevant to the claims against ISS. (Dkt. No. 69-1) 6. None of the time spent on litigation of the motions against the other defendants was included in this fee petition. *Id.* at 4-5. Based on a review of the attached billings, the undersigned agrees that plaintiff appears to have included only those items relevant to the claim against ISS.

Accordingly, the undersigned finds that plaintiff should be awarded the total of $48,405 in fees, along with costs of $430.

## V.    Recommendation

For the foregoing reasons, the undersigned recommends:

1)  Granting plaintiff's motion for default judgment in part;

2)  Awarding plaintiff $381,799 for his loss of income with associated lost tax benefits under Title VII of the Civil Rights Act.

3)  Awarding plaintiff $50,000 in compensatory damages under Title VII of the Civil Rights Act.

4)  Awarding plaintiff $48,835 in attorney's fees and costs.

## VI.    Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendant domain names at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

_____
                /s/
Michael S. Nachmanoff
United States Magistrate Judge

March 11, 2020
Alexandria, Virginia