# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| AHMID DOUGLAS, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:18-cv-1534 |
| ) | |
| SENTEL CORPORATION, *et al.*, ) | |
|     Defendants. ) | |

## ORDER

The matter is before the Court on the United States Magistrate Judge's March 11, 2020 Report and Recommendation (Dkt. 71) granting in part and denying in part plaintiff's Motion for Default Judgment against defendant Infinite Services & Solutions, Inc ("ISS").[1] Specifically, the Magistrate Judge recommended granting plaintiff's motion for default judgment with respect to the following claims: (i) failure to accommodate plaintiff's religious beliefs under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), (ii) retaliation under Title VII, (iii) hostile work environment under Title VII, and (iv) plaintiff's defamation *per se* claim. No objections to the Report and Recommendation were filed.[2] For the reasons that follow, the Court **ADOPTS** the Magistrate Judge's findings of fact as its own and **ADOPTS IN PART** the Magistrate Judge's recommendation.

Before entering default judgment, a court must ensure that the action is within the court's

---

[1] Plaintiff's Second Amended Complaint alleged that defendant ISS, defendant Sentel Corporation, and defendant Vectrus Mission Solutions Corporation (Sentel's corporate successor) were liable under Title VII as plaintiff's joint employers. *See Butler v. Drive Automotive Indus. of Am., Inc.*, 793 F.3d 404, 409–10 (4th Cir. 2015) (recognizing that where two entities control an employee, both entities "may simultaneously be considered employers for purposes of Title VII"). On November 22, 2019, plaintiff stipulated to the dismissal of his claims against defendants Sentel Corporation and Vectrus Mission Solutions Corporation.

[2] General Order No. 2020-03 extended the time for objections from March 25, 2020 to April 8, 2020. General Order No. 2020-07 further extended the time for objections from April 8, 2020 to April 22, 2020.

1

subject matter jurisdiction, that the defaulting defendant is subject to personal jurisdiction, and that the action is in the proper venue. Subject matter jurisdiction is proper because plaintiff brings claims "arising under" a federal statute, Title VII, and supplemental jurisdiction may be exercised over plaintiff's state law claims because plaintiff's state law claims share "a common nucleus of operative fact" with plaintiff's Title VII claims. 28 U.S.C. § 1331; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(a).

A court may exercise personal jurisdiction over a foreign corporation "if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). In relevant part, the Virginia's long-arm statute provides that a "court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code § 8.01-328.1(A)(1). Because Virginia's long arm statute extends personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry. *See Consulting Eng'rs Corp.*, 561 F.3d at 277.

For the exercise of personal jurisdiction to comport with due process, a nonresident defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A court may exercise general or specific personal jurisdiction. General jurisdiction may be exercised where a " corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (alterations in original) (quoting *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a court to exercise specific personal jurisdiction over a defendant, the defendant must have "purposefully established minimum contacts in the forum State" such "that [it] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). In evaluating whether specific jurisdiction may be exercised, the Fourth Circuit considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (citation omitted).

Here, specific personal jurisdiction may be exercised over defendant ISS.[3] First, defendant ISS, a Georgia corporation, purposefully availed itself of the privilege of conducting activities in Virginia when it became a subcontractor for a Virginia-based prime contractor, defendant Sentel, and undertook an obligation to perform work for the Virginia-based Department of Defense. *See Burger King*, 471 U.S. at 479–80 (noting that the plaintiff deliberately reached into the forum state to negotiate an agreement). In doing so, defendant ISS established continuing contacts with defendant Sentel because the parties' relationship permitted employees such as plaintiff to be jointly employed by both defendants. *See id.* at 480 (observing that defendant created continuing and wide-reaching contacts in the forum state). Second, plaintiff's claims arise out of defendant's activities directed toward Virginia because plaintiff performed work pursuant to the contract between the Department of Defense, Sentel, and ISS.

---

[3] The Magistrate Judge recommended that personal jurisdiction may be exercised over defendant ISS based on its substantial and systematic contacts with Virginia. In doing so, the Magistrate Judge did not analyze whether defendant ISS's contacts are so continuous and systematic as to render defendant ISS "at home" in Virginia, and plaintiff's Second Amended Complaint does not establish that defendant ISS's contacts with Virginia meet this demanding standard. *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014).

3

Third, the exercise of personal jurisdiction under these circumstances is constitutionally reasonable because defendant ISS directed activity toward Virginia by voluntarily establishing contractual relationships with defendant Sentel and the Department of Defense. Put another way, defendant ISS's contacts with Virginia are not "random, fortuitous, or attenuated." *Id.* (internal quotation marks omitted). Accordingly, defendant ISS is subject to specific personal jurisdiction in this District with respect to plaintiff's claims.

In evaluating whether venue is proper in the Eastern District of Virginia, the Report and Recommendation applies a provision of the general venue statute, 28 U.S.C. § 1391(b)(3) to all of plaintiff's claims, which provides that a civil action may be brought in, "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." The general venue statute applies to all civil actions "[e]xcept as otherwise provided by law." 28 U.S.C. § 1391(a).

Title VII contains a special venue provision that is distinct from the general venue statute. Under this provision, a Title VII action may be brought in:

> [(i)] any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [(ii)] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [(iii)] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought [(iv)] within the judicial district in which the respondent has his principal office.

42 U.S.C.A. § 2000e-5(f)(3). Although the Fourth Circuit has not addressed the relationship between Title VII's venue statute and the general venue statute, several Circuit Courts of Appeals have held that Title VII's specific venue provision displaces general venue provisions.[4]

---

[4] *See Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586, 587–88 (9th Cir. 1991) ("[G]iven the conflict between

4

The Second Amended Complaint's factual allegations do not establish that venue is proper in the Eastern District of Virginia for plaintiff's Title VII claims against defendant ISS. First, it appears that the alleged unlawful employment practices under Title VII were committed in Afghanistan. Second, the Second Amended Complaint lacks factual allegations regarding the location where the employment records relevant to the alleged unlawful employment practices were maintained. Third, it appears plaintiff would have continued to work in Afghanistan had the alleged unlawful employment practices not occurred. And Title VII's residual venue option—the judicial district of the respondent's principal office—does not provide for venue in the Eastern District of Virginia with respect to defendant ISS, which has its principal office in Georgia.[5]

Notwithstanding that this District is an improper venue for plaintiff's Title VII claims against defendant ISS, defendant ISS has waived all venue objections because defendant ISS was served with process pursuant to Va. Code § 12.1-19.1, is in default, and has not filed any objections to the Report and Recommendation. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."); *see also Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 643 (E.D. Va. 1997) (same).[6]

---

the two statutes, well settled principles of statutory construction dictate that the later, specific venue provision (section 2000e-5(f)(3)) applies rather than the earlier, general venue provision (section 1391[b]).") (quoting *Bolar v. Frank*, 938 F.2d 377, 378 (2d Cir. 1991)); *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1191 (10th Cir. 1998) ("It has long been settled in this circuit that this provision, rather than the general venue statute, governs venue in Title VII actions."); *Stebbins v. State Farm Mut. Auto Ins. Co.*, 413 F.2d 1100, 1102–03 (D.C. Cir. 1969) (applying § 2000e-5(f), not the general venue statute, to Title VII claim).

[5] To be sure, this District appears to have been a proper venue for plaintiff's Title VII claims against defendants Sentel and Vectrus Mission Solutions Corporation pursuant to Title VII's residual venue option because these defendants have their principal offices in this District.

[6] Because defendant ISS has not objected to venue, it is not necessary to consider whether it would have been proper for plaintiff's Title VII claims against his alleged joint employers to proceed in the same forum. *See Al-Kaysey v. L-3 Servs. Inc.*, No. 11-cv-6318 (RRM)(LB), 2013 WL 5447686, at *8 (E.D.N.Y. Sept. 27, 2013) (denying Secretary of Army's motion to transfer Title VII claims to another venue because venue was proper for plaintiff's Title VII claims against a co-defendant defense contractor and all Title VII claims "stem from the same sequence of actions

The Second Amended Complaint's factual allegations establish that defendant ISS is liable for failure to accommodate plaintiff's religious beliefs, retaliation, and hostile work environment based on religion under Title VII. Title VII makes it an unlawful employment practice "to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Under that provision, an employer must "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *E.E.O.C. v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)). Here, plaintiff has established that defendant failed to accommodate his bona fide religious beliefs by not granting plaintiff's requests to attend Friday services at a mosque. The Second Amended Complaint's factual allegations make clear that defendant ISS could have done so without incurring an undue hardship because defendant ISS accommodated non-Muslim employees' attendance of religious services.[7]

The Magistrate Judge's recommendation to enter default judgment against defendant on plaintiff's Title VII retaliation claim is adopted because (i) plaintiff's factual allegations establish that plaintiff engaged in Title VII protected activity by opposing his supervisors' refusal to accommodate his religious beliefs and harassment, (ii) plaintiff's employer took materially

---

and [plaintiff] alleges violations are a product of coordination and cooperation between" defendants); *cf. Prescott-Harris v. Fanning*, No. 15-1716 (RC), 2016 WL 7223276, at *7 (D.D.C. Dec. 12, 2016) (noting in a Title VII action "against two completely separate employers" that severance and transfer of Title VII claims against one defendant was proper).

[7] Although plaintiff's factual allegations establish a violation of defendant's reasonable accommodation duty, it is important to note that plaintiff misstates the elements of the *prima facie* case for a failure to accommodate religious belief claim. To establish a *prima facie* case of a violation of this "reasonable accommodation" duty, an employee must show "(1) [that] he or she has a bona fide religious belief that conflicts with an employment requirement; (2) [that] he or she informed the employer of this belief; [and] (3) [that] he or she was disciplined for failure to comply with the conflicting employment requirement." *Consol Energy, Inc.*, 860 F.3d at 141 (quoting *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008)); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (same). In his motion for default judgment, plaintiff incorrectly stated that the third element of the *prima facie* case requires a showing that that "the employer nevertheless enforced its requirement against the employee." *See* Report and Recommendation at *6.

adverse action by demoting and later discharging plaintiff, and (iii) the protected activity and materially adverse actions were causally connected based on temporal proximity and defendant's pretextual reasons for the materially adverse actions. *See Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (holding that triable existed on Title VII retaliation claim where plaintiff was terminated shortly after she complained to supervisor about supervisor's harassment).

Plaintiff's factual allegations are also sufficient to support plaintiff's Title VII hostile work environment claim based on religious belief. To prevail on a hostile work environment claim, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's protected characteristic; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer. *Id.* at 221 (citations omitted). Plaintiff experienced unwelcome conduct based on his religion when he was denied the ability to attend Friday services at a mosque and subjected to anti-Muslim verbal abuse by Master Supply Tech Janine Brown. Although the factual allegations regarding isolated incidents of verbal abuse do not satisfy the "severe or pervasive" requirement on their own, Brown's comments and defendant ISS's repeated refusal to permit plaintiff to attend Friday services at a mosque satisfy the "severe or pervasive" requirement. And the alleged conduct is imputable to defendant ISS because plaintiff's supervisors were responsible for the alleged harassing conduct.

With respect to plaintiff's Title VII claims, the Magistrate Judge recommended an award of damages for lost income in the amount of $381,799, which the Magistrate Judge stated would compensate plaintiff for his lost wages of $282,814 and add 35 percent of plaintiff's lost wages, $98,985, to offset tax payments that plaintiff argues he would not have incurred had he been paid

annually for work performed in Bagram, Afghanistan that would have been subject to the Foreign Earned Income Exclusion. The Magistrate Judge's recommendation will be adopted in part insofar as plaintiff will be awarded $282,814 in back pay on plaintiff's Title VII claims.

Title VII authorizes awards of back pay for lost wages. 42 U.S.C. § 2000e-5(g)(1). Back pay awards are "wages" as defined by the Internal Revenue Code. *See Noel v. N.Y. State Office of Mental Health Central N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012) (citing I.R.C. § 3401(a)). A lump-sum back pay award may "push a plaintiff into a higher tax bracket than he would have occupied had he received his pay incrementally over several years." *Clemens v. Centurylink, Inc.*, 874 F.3d 1113, 1116 (9th Cir. 2017). The Third, Seventh, Ninth, and Tenth Circuits have held that district courts have discretion to fashion back pay awards that account for the income tax consequences of a lump-sum back pay award. *See Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 440–43 (3d Cir. 2009); *EEOC v. N. Star Hosp., Inc.*, 777 F.3d 898, 903–04 (7th Cir. 2015); *Clemens*, 874 F.3d at 1116; *Sears v. Atchison, Topeka & Santa Fe. Ry., Co.*, 749 F.2d 1451, 1456–57 (10th Cir. 1984). The party seeking relief bears "the burden of showing an income-tax disparity and justifying any adjustment." *Clemens*, 874 F.3d at 1117.

Here, plaintiff has not provided sufficient information to support an adjustment of plaintiff's back pay award based on an income tax disparity. Plaintiff has not submitted sufficient evidence to show that the entire $282,814 back pay award would be taxed at a 35 percent marginal rate based on plaintiff's income, filing status, and ability to report any part of the award as excludable foreign income. *See* IRS Pub. No. 54 (Rev. Dec. 23, 2019), *available at* www.https://www.irs.gov/pub/irs-pdf/p54.pdf (explaining applicable rules for reporting excludable foreign income earned in year following work done to earn foreign income). Because

plaintiff has not met his burden of justifying an increase in the award to avoid tax disparities, plaintiff's back pay award will be limited to $282,814.[8]

The Magistrate Judge also recommended an award of compensatory damages pursuant to 42 U.S.C. § 1981a(a)(1) in the amount of $50,000 for plaintiff's emotional distress. The Magistrate Judge recommended no damages for future pay, and plaintiff did not object. Accordingly, the Magistrate Judge's recommendation of an award of $50,000 in compensatory damages under Title VII is adopted, and plaintiff's request for an award of future pay is denied.

The Magistrate Judge's recommendation that default judgment be entered against defendant ISS on plaintiff's defamation *per se* claim is also adopted. Although the Magistrate Judge did not recommend an additional award of damages on plaintiff's defamation *per se* claim because the Magistrate Judge had already recommended an award for compensatory damages under Title VII, plaintiff suffered a distinct reputational injury as a result of defendant's false and defamatory statement to a prospective employer that plaintiff never worked for defendant ISS. Accordingly, an award of damages in the amount of $1,000 dollars is warranted with respect to plaintiff's defamation *per se* claim.

Plaintiff seeks $48,405 in attorney's fees and $430 in taxable costs for filing the complaint and serving defendant ISS with process through the Virginia State Corporation Commission pursuant to Va. Code §§ 12.1-19.1 and 13.1-758(F) will be adopted. In analyzing the plaintiff's motion for attorney's fees under the factors outlined in *Barber v. Kimbrell's Inc.*,

---

[8] Because plaintiff alleged that defendant ISS and the settling defendants, Sentel Corporation and Vectrus Missions Solutions Corporation, were plaintiff's joint employers, a back pay award of $282,814 against defendant ISS alone raises the possibility that enforcement of this default judgment against defendant ISS and plaintiff's receipt of an undisclosed amount of settlement proceeds will result in a double recovery for plaintiff. This possibility of double recovery does not alter the result reached here because no evidence in the record indicates that plaintiff will receive a double recovery and no objections were filed to the Magistrate Judge's recommendation of an award of $381,799 in back pay.

9

577 F.2d 216 (4th Cir. 1978), the Magistrate Judge noted that plaintiff's requested attorney's fee award reflected the significant amount of time spent on proceedings before the EEOC prior to filing this Title VII action in the Eastern District of Virginia. Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). The Fourth Circuit has held that a party who eventually prevails in a Title VII action in federal court may receive attorney's fees for "services performed at the administrative level" during proceedings that were a prerequisite to filing a Title VII suit. *Mammano v. Pittston Co.*, 792 F.2d 1242, 1245 (4th Cir. 1986) (remanding with orders to award reasonable attorney's fees for services rendered at the administrative, trial, and appellate levels in Title VII action) (citing *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980)); *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 577 (E.D. Va. 1988) (awarding attorney's fees associated with state administrative proceedings that preceded Title VII plaintiff's success at trial).[9] Here, plaintiff's attorney performed work in EEOC proceedings that were a necessary prerequisite to plaintiff filing this Title VII action. Accordingly, the Magistrate Judge's recommended award of attorney's fees and costs is adopted.

The Magistrate Judge recommended denial of default judgment as to plaintiff's tortious interference with business expectancy and civil conspiracy claims, and plaintiff did not object to the Magistrate Judge's recommendation in this regard. Accordingly, default judgment will be denied as to plaintiff's tortious interference with business expectancy and civil conspiracy claims.

---

[9] To be sure, the Fourth Circuit has held that Title VII does not permit a plaintiff to bring an action "solely for attorney's fees and costs incurred during the course of the Title VII administrative process." *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000).

Accordingly,

It is hereby **ORDERED** that the Court **ADOPTS IN PART** the recommendation of the United States Magistrate Judge as set forth in this Order.

It is hereby **ORDERED** that judgment is **ENTERED** by default in favor of plaintiff and against defendant Infinite Services & Solutions, Inc. in the total amount of **$382,649**.

The Clerk is **DIRECTED** to enter judgment in accordance with this Order pursuant to Rule 58, Fed. R. Civ. P.

The Clerk is directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.

Alexandria, Virginia
May 21, 2020

T. S. Ellis, III
United States District Judge